UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

TRANAE PARRISH,                          )
                                         )
                    Plaintiff,           )
                                         )
        v.                               )    No. 1:24-cv-00527-JPH-TAB
                                         )
BUY RITE, INC.,                          )
                                         )
                    Defendant.           )

**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Tra'Nae Parrish alleges that Buy Rite, Inc. terminated her employment based on her race and color and in retaliation for complaining of discrimination.  Dkt. 1 at 2.  Defendant has filed a motion for summary judgment.  Dkt. [48].  For the reasons below, that motion is **GRANTED in part** and **DENIED in part.**

**I.**
**Facts and Background**

Because Buy Rite has moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable interests in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009).

Ms. Parrish worked as a store clerk for Crown Liquors, which was operated by Defendant Buy Rite, from September 2022 to January 9, 2023. Dkt. 48-1 at 5, 7 (Parrish Dep. at 17, 19); dkt. 55-9 at 4.  As a clerk, she stocked shelves, rang up customers, and kept the store tidy.  Dkt. 48-1 at 16 (Parrish Dep. at 28); dkt. 55-9 at 4.  Ms. Parrish also had a full-time job with

another employer, so she worked for Buy Rite only on weekday evenings and weekends.  Dkt. 48-1 at 17 (Parrish Dep. at 29).

On December 28, 2022, one of Ms. Parrish's supervisors, Stacey Campbell, sent a text message to Ms. Parrish and two other Buy Rite employees:

> Just for further reference Monday through Wednesday, there is no cooler person here you as the Night Shift are required to go into the cooler and fill your shelves. Your manager is not very happy right now, so please start doing this.

Dkt. 48-3.  Later that day, Ms. Parrish texted another co-worker about this, saying that "[Campbell's] mayo eatin ass can count her days! the caucasity OF IT ALL!"  Dkt. 48-1 at 75.  Ms. Parrish added how "yt peepo are soo rude" and referred to another older co-worker as a "yt wrinkled ass." *Id.*  Ms. Parrish used "caucasity" as a "slang term" to describe a Caucasian person and "yt" as "meaning white, just a short term for white." *Id.* at 42–44 (Dep. at 59–61).

When Ms. Parrish arrived for her shift on January 3, 2023, she noticed that she was not scheduled for the next week.  Dkt. 48-1 at 30; (Parrish Dep. at 44).  On January 8, 2023, Ms. Parrish texted Ms. Campbell complaining that other employees had more hours than she did.  Dkt. 48-4 at 1.  Ms. Campbell replied that January and February were slow months for liquor stores, so Ms. Parrish's other supervisor, Carlos Reyes, cut hours. *Id.* at 2.  Ms. Parrish responded that her hours weren't merely cut but were "not on there at all." *Id.* at 2.  Ms. Campbell explained that "[e]veryone has more hours than you every week because of your availability." *Id.* at 3.

2

The next day, Ms. Campbell texted Ms. Parrish to terminate her employment due to "racist remarks":

> It has come to my attention that you have said some racist remarks about not only me but your coworkers. We at Crown do not put up with racist remarks from anyone.  At this time your employment with Crown is terminated.

*Id.* Ms. Parrish responded:

> [I] knew that was coming just any and everything to terminate me which is why you didn't want to talk to me to begin with! as many times as carlos has said racist stuff you as well! you got some type of nerve! but that's okay! you could have just sat me down like a real woman but instead you rather text with your unprofessional    ass!    YOU    ARE    LITERALLY DISCRIMINATING AGAINST ME!! you don't care for blacks nor fight for em! you mike greg david all y'all!!

*Id.*

Ms. Campbell managed multiple Buy Rite locations.  Dkt. 55-3 at 28 (Campbell Dep. at 27).  At one of those locations, Ellen Suggett, a white woman, worked as a store manager under Ms. Campbell.  *Id.* at 14 (Campbell Dep. at 13); dkt. 55-15 at 13 (Suggett Dep. at 12).  Ms. Campbell knew that Ms. Suggett used racial slurs in front of her co-workers, but she did not terminate Ms. Suggett's employment.  Dkt. 55-4 at 68–69 (Campbell Dep. at 67–68); dkt. 55-14 (Moffett Aff. ¶ 15); dkt. 55-16 (Veal Aff. ¶ 13).

Buy Rite's employee handbook prohibited discrimination in "all terms and conditions of employment, including but not limited to, hiring, placement, promotion, termination, layoff, recall, transfer, leaves of absence, benefits, compensation, and training."  Dkt. 48-2 at 15.  The handbook also tells

employees to "promptly bring" any concerns about discrimination "to the attention of [their] immediate supervisor, designated manager, or one of the owners . . . . [to] be promptly, thoroughly and impartially investigated." *Id.* Ms. Parrish signed that she received the handbook and testified that she was aware of Buy Rite's anti-discrimination policies. Dkt. 48-1 at 48–49 (Parrish Dep. at 65–66).

In March 2024, Ms. Parrish filed this suit alleging that Buy Rite discriminated against her on the basis of race and color and retaliated against her for engaging in protected activity in violation of 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981. *Id.* Buy Rite filed a motion for summary judgment. Dkt. 48.

## II.
## Summary Judgment Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

In ruling on a motion for summary judgment, the Court views the evidence "in the light most favorable to the non-moving party and draw[s] all

reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted).

### III.
### Analysis

### A. Race and Color Discrimination

Buy Rite argues that it is entitled to summary judgment on Ms. Parrish's race and color discrimination[1] claims brought under Title VII and 42 U.S.C. § 1981. Dkt. 49 at 7–9. Title VII makes it unlawful for any employer to "discharge any individual, or otherwise to discriminate against any individual . . . because of such individual's race [or] color." 42 U.S.C. § 2000e-2(a)(1). Under § 1981, "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens[.]" 42 U.S.C. § 1981. The same legal standard applies to race-discrimination claims under Title VII and § 1981. *Saud v. DePaul Univ.*, 154 F.4th 563, 567 (7th Cir. 2025); *Gamble v. Cnty. of Cook*, 106 F.4th 622, 625 (7th Cir. 2024).

---

[1] In reply, Buy Rite argues that Ms. Parrish abandoned her color discrimination claim by "focus[ing] heavily on *race* discrimination" without separately addressing color discrimination. Dkt. 57 at 2–4. Buy Rite, however, relies only on cases holding that an EEOC complaint alleging race discrimination did not administratively exhaust a claim of color discrimination. *Id.* While a color discrimination claim "focuses on discrimination based on the lightness or darkness of a person's skin, not simply membership in a particular racial group," *Birkley v. Target-557-DC Target Dist. Ctr.*, No. 25-cv-793, 2025 WL 2652210, at *6 (E.D. Wis. Sep. 16, 2025), there's no requirement that race and color discrimination claims be argued and analyzed separately to avoid abandoning the claim. Indeed, Buy Right also analyzes Ms. Parrish's race and color claims together in its briefs. Dkt. 49 at 7–9; dkt. 57 at 4 n.1. Ms. Parrish expressly argued that both her race and color were the real reasons for her termination, dkt. 56 at 2, so she has not abandoned the claim. *See Maclin v. SBC Ameritech*, 520 F.3d 781, 788 (7th Cir. 2008).

"[T]he singular question that matters in a discrimination case" is "'whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other prescribed factor caused the discharge or other adverse employment action.'" *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018) (quoting *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 764–66 (7th Cir. 2016)). A plaintiff may organize and present evidence using the burden-shifting approach articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *see Johnson*, 892 F.3d at 895 ("[T]here is no magic to this test; it is merely one way of culling the relevant evidence needed to demonstrate whether a reasonable factfinder could conclude that an employer engaged in an adverse employment action based on the plaintiff's race or other proscribed factor."). Here, Ms. Parrish proceeds under only the *McDonnell Douglas* approach. Dkt. 56 at 11–13.

To establish a prima facie case under *McDonnell Douglas*, a plaintiff must show that she (1) belonged to a protected class, (2) met her employer's legitimate expectations, (3) suffered an adverse employment action, and (4) was similarly situated to other employees who were not members of the protected class and were treated more favorably. *McDonnell Douglas*, 411 U.S. at 802. If the plaintiff makes a prima facie case, the burden shifts to the defendant to give a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If the defendant meets this burden, the burden shifts back to the plaintiff to show that the defendant's explanation is pretextual. *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 225 (7th Cir. 2017).

### 1. Prima facie case

It's uncontested that Ms. Parrish belongs to a protected class and that
the termination of her employment was an adverse employment action.  Dkt.
49 at 9.  Ms. Parrish therefore must show that she was meeting Buy Rite's
legitimate expectations and identify a "comparator" to satisfy her prima facie
case.  For a "disparate punishment" claim like this one, Ms. Parrish may
establish both elements by "showing that a similarly situated employee outside
the plaintiff's class committed a similar act but was subject to less severe
discipline."  *Perez v. Thorntons, Inc.*, 731 F.3d 699, 704 (7th Cir. 2013); *Dunlevy
v. Langfelder*, 52 F.4th 349, 354 (7th Cir. 2022) ("If a comparator engaged in
equivalent or more egregious conduct than the plaintiff but received a lighter
punishment, or none at all, that satisfies the inquiry.").

"A suitable comparator is an employee who is directly comparable to the
plaintiff 'in all *material* respects.'"  *Palmer v. Ind. Univ.*, 31 F.4th 583, 590 (7th
Cir. 2022).  "There must be 'enough common factors' between the plaintiff and
[her] comparator 'to allow for a meaningful comparison.'"  *Id.*  "[W]hether
employees are similarly situated is a 'flexible, common-sense, and factual'
inquiry."  *David*, 846 F.3d at 225–26.  "Relevant factors include "whether the
employees (i) held the same job description; (ii) were subject to the same
standards, (iii) were subordinate to the same supervisor, and (iv) had
comparable experience, education, and other qualifications."  *Id.*

Ms. Parrish argues that Ellen Suggett, a white woman who worked as a
Store Manager for a different Buy Rite location, is a suitable comparator.  Dkt.

7

56 at 15–16.  Buy Rite responds that Ms. Suggett is not an appropriate comparator because she was a manager at a different location and the designated evidence does not show that she directed discriminatory language at a co-worker.  Dkt. 57 at 7.

Ms. Parrish has designated evidence that Ms. Suggett used the "n-word" on multiple occasions at work, including around Ms. Campbell.  Dkt. 55-4 at 68–69 (Campbell Dep. at 67–68); dkt. 55-14 at 2 (Moffett Aff. ¶ 15); dkt. 55-16 at 2 (Veal Aff. ¶ 13).  Ms. Campbell supervised Ms. Suggett but did not terminate Ms. Suggett for her use of racial slurs.  Dkt. 55-4 at 68–70 (Campbell Dep. at 67–69).  This designated evidence allows Ms. Parrish to use Ms. Suggett as a comparator—they both reported to Ms. Campbell and used racial slurs or slang that would violate Buy Rite' policy in the same way.  *See Dunlevy*, 52 F.4th at 354 ("If a comparator engaged in equivalent or more egregious conduct than the plaintiff but received a lighter punishment, or none at all, that satisfies the inquiry.").

Nevertheless, Buy Rite argues that Ms. Suggett is an improper comparator because she was a store manager rather than a store clerk like Ms. Parrish.  Dkt. 57 at 7.  But while supervisors can "make unrealistic comparators" because they "commonly have different job duties or performance standards," that depends on "the issues in a particular case."  *Rodgers v. White*, 657 F.3d 511, 518 (7th Cir. 2011).  So, "when a plaintiff and [her] supervisor were accused of making similar mistakes, were equally responsible for avoiding those mistakes, and were disciplined by the same superior, the

plaintiff can make a realistic comparison." *Id.* ("Formal job titles and rank are

not dispositive; an employer cannot insulate itself from claims of racial

discrimination by making formalistic distinctions between employees.").  That's

the case here—Buy Rite admits that its anti-discrimination policy applied to

Ms. Suggett and makes no argument that it was somehow less important for

supervisors to avoid using racial slurs.  *See* dkt. 57 at 7; *Dunlevy*, 52 F.4th at

354 ("The north star in the similarly situated inquiry has always been whether

the two employees engaged in conduct of comparable seriousness.").  In fact, a

supervisor can be held to higher standards.  *See Faragher v. City of Boca*

*Raton*, 524 U.S. 775, 802–03 (1998); *Senske v. Sybase, Inc.*, 588 F.3d 501, 510

(7th Cir. 2009).

Buy Rite next contends that Ms. Suggett's use of racial slurs was

different than Ms. Parrish's because it was not directed at a co-worker or

supervisor.  Dkt. 57 at 7.  But when "a proposed comparator violated the same

rule as the plaintiff in an equivalent or more serious manner, courts should not

demand strict factual parallels." *Coleman*, 667 F.3d at 850 (explaining that

violating the same rule in different ways makes someone a comparator if the

conduct is "of comparable seriousness"); *see Johnson*, 892 F.3d at 895 (A

comparator "need not be identical in every conceivable way.").  Buy Rite's anti-

discrimination policy does not make Ms. Suggett's racial slurs less serious than

the "racist remarks" attributed to Ms. Parrish as the reason for her

termination, *see* dkt. 55-7 at 15–17, and Ms. Parrish has designated evidence

that Ms. Suggett violated the policy *at work* in violation of Buy Rite's anti-

discrimination policy.  Dkt. 55-14 at 2; dkt. 55-16 at 2.  A reasonable factfinder could therefore conclude from the designated evidence that the misconduct allegations against Ms. Suggett are "comparably serious" to Ms. Parrish's.  *See Dunlevy*, 52 F.4th at 354 ("We have repeatedly warned that courts should not draw the question of similarly situated too narrowly.").

In sum, Ms. Parrish has designated evidence from which a reasonable jury could find that Ms. Suggett was similarly situated and engaged in misconduct "comparably serious" to Ms. Parrish's misconduct, so Ms. Parrish has established the comparator element of her prima facie case.  *See Johnson*, 892 F.3d at 895 ("Whether a comparator is similarly situated is typically a question for the fact finder.").[2]

### 2. Reason for termination and pretext

Because Ms. Parrish has made a prima facie case, the burden shifts to Buy Rite to provide a legitimate, non-discriminatory reason for the adverse employment action.  *McDonnell Douglas*, 411 U.S. at 802.  Buy Rite has done so by providing evidence that it terminated Ms. Parrish's employment because she violated Buy Rite's anti-discrimination policy.  *See* dkt. 48-4 at 3.  The burden therefore shifts back to Ms. Parrish to show that Buy Rite's reason is pretextual.  *David*, 846 F.3d at 225.  "Pretext is a lie, specifically a phony reason for some action, not just faulty reasoning or mistaken judgment on the part of the employer."  *Napier v. Orchard Sch. Found.*, 137 F.4th 884, 892 (7th

---

[2] The Court therefore does not address whether any other potential comparators are similarly situated.  *See Dunlevy*, 52 F.4th at 354.

Cir. 2025).  In the pretext inquiry, "[t]he question is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reasons it has offered to explain the discharge."  *Coleman*, 667 F.3d at 852.

Ms. Parrish argues that because Ms. Suggett engaged in comparably serious misconduct yet was not fired, a reasonable jury could conclude that Buy Rite's stated reason for her termination was pretextual.  Dkt. 56 at 17. Buy Rite responds that Ms. Parrish has provided no evidence of pretext except "that others were treated more favorably."  Dkt. 57 at 8–9.

Ms. Parrish's comparator evidence about Ms. Suggett "can do 'double-duty' at both the prima facie and pretext stages" and is "'especially relevant' at the pretext stage."  *Coleman*, 667 F.3d at 841, 858 (quoting *McDonnell Douglas*, 411 U.S. at 804)).  An employer "selectively enforc[ing] a company policy against one [race] but not the other" can show pretext, and "[a] discrimination plaintiff may employ such comparator evidence to discharge her burden at the pretext stage."  *Id.* at 853, 858; *accord Napier,* 137 F.4th at 894 ("[C]omparator evidence and selective enforcement of an employer's rules are relevant to a pretext analysis.").

Here, a reasonable jury could conclude from Ms. Parrish's designated comparator evidence that Buy Rite treated Ms. Parrish less favorably than white employees who committed comparable policy violations such that the stated reason for Ms. Parrish's termination was a pretext for discrimination. *See Baker v. Macon Res., Inc.,* 750 F.3d 674, 677 (7th Cir. 2014) (reversing

11

summary judgment because the employer's failure to equally discipline employees for policy violations allowed a reasonable jury to find pretext); *Napier*, 137 F.4th at 892 ("[W]hen there is sufficient evidence that an employment action was discriminatory, an employer cannot sanitize the decision by pointing to a legitimate problem with an employee's performance."). "[O]nce the employee has cast doubt upon the employer's proffered reasons for the termination, the issue of whether the employer discriminated against the plaintiff is to be determined by the jury—not the court."[3] *Rudin*, 420 F.3d at 726.

Summary judgment is therefore **DENIED** as to Ms. Parrish's race and color discrimination claims under Title VII and § 1981.

**C. Retaliation**

Title VII prohibits employers from "discriminat[ing] against any . . . employees" who "opposed any practice" made unlawful by Title VII, 42 U.S.C. § 2000e-3(a), and § 1981 similarly "encompasses retaliation claims." *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 451 (2008); *Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017) ("[Courts] generally use the same standard to review . . . retaliation claims under § 1981 and Title VII."). To prevail on her retaliation claim, Ms. Parrish must show "(1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two." *Baines*, 863 F.3d at 661.

---

[3] Because there is a triable issue of fact on pretext for these reasons, the Court does not reach the parties' remaining arguments about the "shifting" reasons for Ms. Parrish's termination.

Buy Rite argues that it's entitled to summary judgment because no reasonable jury could find that Ms. Parrish engaged in a protected activity or that there was a causal connection between Ms. Parrish's complaint and her termination. *See* dkt. 49 at 9–11. Ms. Parrish responds that her complaint about her lack of hours implied differential treatment between her and white coworkers. Dkt. 56 at 19.

For a complaint like Ms. Parrish's to be protected activity, it must be connected to a protected class. *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006); *cf. Davis v. Time Warner Cable of Se. Wis., L.P.*, 651 F.3d 664, 668 (7th Cir. 2011) (complaint specifying that "African American" employees were treated differently than "white counterparts" was protected activity). But the text messages Ms. Parrish sent to Ms. Campbell before her termination do not mention race, or any other protected class. Dkt. 48-4 at 3. Instead, Ms. Parrish complained that "everyone else," including coworkers with less seniority, was scheduled for more hours than she was. *Id.* at 1. She therefore did not include "sufficient facts to raise [an] inference" of a race-discrimination complaint. *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 851 (7th Cir. 2008) (holding that plaintiff's email was not protected activity because it merely mentioned immigration status in a broader complaint about his supervisor, schedule, and workload). Indeed, here—as in *Andonissamy*— Ms. Parrish conceded in her deposition that she never complained about racial discrimination before she was terminated. Dkt. 55-1 at 92 (Parrish Dep. at 91); *Andonissamy*, 547 F.3d at 851.

13

Ms. Parrish's reliance on *Jett v. ISS Facility Servs., Inc.* does not show otherwise.  No. 1:20-cv-02976, 2022 WL 1316528 at *13 (S.D. Ind. 2022). There, the plaintiff complained that his supervisor treated "everyone else" differently than him and another Black employee.  *Id.* at *12.  The district court held that a reasonable jury could find that the complaint was about race discrimination because Mr. Jett and the other mentioned employee were the only Black employees at the company.  *Id.* at *12–13.  Here, by contrast, Ms. Parrish had several Black coworkers, dkt. 55-1 at 36–37 (Parrish Dep. at 35–36), so *Jett* does not support an inference that her complaint about "everyone else's" hours was about race discrimination.  *See Tomanovich,* 457 F.3d at 663 ("Complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient.").

Summary judgment is therefore **GRANTED** as to Ms. Parrish's retaliation claims under Title VII and § 1981.[4]

## IV.

## Conclusion

Defendant's motion for summary judgment is **GRANTED in part** and **DENIED in part**.  Dkt. [48].  Magistrate Judge Baker is asked to hold a status conference to discuss settlement and trial readiness.

**SO ORDERED.**

Date: 12/5/2025

*James Patrick Hanlon*
_____
James Patrick Hanlon
United States District Judge
Southern District of Indiana

---

[4] Because the designated evidence does not allow a reasonable jury to find that Ms. Parrish engaged in protected activity, the Court does not reach Buy Rite's other arguments on her retaliation claim.

14

Distribution:

All electronically registered counsel